**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

MARK S. JOHNSON,                                      Case No. 1:10-cv-554

        Plaintiff,                                      Dlott, J.
                                                     Bowman, M.J.

    v.

REHABILITATION SERVICES, et al.,

        Defendants.

**REPORT AND RECOMMENDATION**

**I. Background**

On August 17, 2010, Plaintiff, proceeding *pro se*, filed an application to proceed *in forma pauperis* and a 92-page type-written document with more than 100 pages of attachments.  Pursuant to local practice, a magistrate judge was originally assigned to review the Plaintiff's submissions.  See 28 U.S.C. §636(b).

Although initially docketed as a "complaint" because it was filed with Plaintiff's application for leave to proceed *in forma pauperis*, Plaintiff's 92-page submission was not captioned as a complaint, but instead was entitled "motion for habeas corpus relief from misdiagnosis and discriminatory acts against my type of disability under the 1990 Americans with Disabilities Act."  The then-assigned magistrate judge[1] described the documents as "rambling and very confusing" and declared that the court "cannot understand exactly what Mr. Johnson's claims are from the document he has submitted."

---

[1]This case was originally assigned to Magistrate Judge Timothy Hogan.  Following Judge Hogan's retirement, the case was reassigned to the undersigned magistrate judge.

(Doc. 2 at 1).  The Court continued:

> As best the Court can discern, it appears that Mr. Johnson may be seeking to file a civil complaint challenging the denial of vocational rehabilitation services from the Rehabilitation Services Commission of Ohio.  Attached to the "motion" is a decision of a hearing officer of the Ohio Rehabilitation Services Commission upholding the Bureau of Vocational Rehabilitation (BVR)'s decisions to require that Mr. Johnson undergo a psychiatric evaluation and treatment before receiving BVR services and to close Mr. Johnson's BVR case in the absence of evidence showing he had taken steps towards receiving an evaluation and treatment.  Aside from a potential claim under the Rehabilitation Act, the Court is unable to determine the facts and basis for Mr. Johnson's lawsuit.

(Doc. 2 at 1-2).  Because Plaintiff was proceeding *pro se*, the Court permitted him time "to submit a complaint of no more than five pages in length setting forth a *brief* statement of the facts in support of his claims (what happened to him to cause him harm), the names of the defendants (who was involved and how these individuals caused him harm), and the relief requested from the Court (what he wants the Court to do for him)."  (*Id.* at 2)(emphasis original).

On September 16, 2010, Plaintiff attempted to comply with the court's directive by filing a complaint against three defendants, alleging that the named Defendants, acting under color of Ohio law, deprived him of his civil rights in violation of 28 U.S.C. §1343(a)(3).  (Doc. 3 at 2).  Attached to Plaintiff's complaint form were three type-written pages containing allegations setting out two distinct claims.

Under "Count One," Plaintiff alleges that on March 24, 2009, he submitted to Defendant Ohio Rehabilitation Services Commission ("ORSC") an application seeking employment services based upon prior diagnoses of alcoholism and diabetes.  Plaintiff states that he seeks to challenge in this Court "the denial of vocational rehabilitation services from the Ohio Commission and its appointed hearing officer based on violations

2

of federal and state laws governing over the commission." (Doc. 3 at 6). Plaintiff alleges that the Commission violated the Americans With Disabilities Act ("ADA") when it denied him benefits. (*Id.* at 6-7).

In "Count Two" Plaintiff alleges that Defendant Dr. R. Stutz performed a "fraudulent assessment with misdiagnosis and psychological malpractice" because "a student" who was not licensed "performed this assessment" and wrongly concluded that Plaintiff was paranoid. (*Id.* at 7-8). Plaintiff alleges that Defendant Stutz violated state law including applicable state rules of professional conduct. As relief on both counts, Plaintiff seeks "reinstatement " of his rehabilitation services benefits and monetary damages. (*Id.* at 8). In the caption of his complaint, Plaintiff has identified as a third defendant the University of Cincinnati Department of Psychology, which employs Defendant Stutz.

In order to interpret Plaintiff's claims, in addition to Plaintiff's complaint (Doc. 3), the Court reviewed the ORSC hearing officer's decision upholding the Bureau of Vocational Rehabilitation (BVR)'s decision to require that Plaintiff undergo a psychiatric evaluation and treatment before receiving BVR services. That decision, attached to Plaintiff's initial filings, reflects the hearing officer's determination to close Plaintiff's BVR case in the absence of evidence showing that Plaintiff had taken steps towards receiving an evaluation and treatment. (Doc. 4, *citing* Doc.1 at pp 112-119, 154-165). The Court surmised from the administrative decision and Plaintiff's complaint that for purposes of the instant litigation, Plaintiff is alleging that both the denial by Defendants of vocational rehabilitation services and the psychological report rendered by Dr. Stutz violate federal and state law. (Doc. 4 at 2).

Having determined that the claims as alleged merited a response from Defendants,

3

the Court directed Plaintiff to provide copies of his complaint and summons forms for each of the three Defendants.  (Doc. 4).  Plaintiff provided the requisite forms, and the Court thereafter directed the U.S. Marshal to complete service on Defendants as directed by the Plaintiff.  (Doc. 7).  On December 2, 2010, Defendant Robert Stutz filed an answer (Doc. 9).  On December 6, 2010, Defendant University of Cincinnati Psychology Department filed a motion to dismiss in lieu of an answer (Doc. 11), and on January 28, 2011, Defendant Ohio Rehabilitation Services Commission did likewise (Doc. 13).

On February 10, 2011, Plaintiff filed a "motion for demand of relief by Clerk's Default," (Doc. 14), as well as a "motion for award of demand for relief by Clerk's Default (Doc. 15).  On the same date, Plaintiff filed a "motion to quash dismissal and proceed into trial by jury," (Doc. 16), which motion is construed primarily as a response to Defendants' previously filed motions to dismiss.  On March 2, 2011, Defendant Robert Stutz filed a motion for judgment on the pleadings (Doc. 20).  Just yesterday, Plaintiff filed three additional motions, one of which is considered to be dispositive and is therefore addressed below.  With the exception of yesterday's motions, all other motions have been fully briefed and are now before the undersigned magistrate judge for initial consideration.

Having completed initial review, I recommend that the motions to dismiss filed by the University of Cincinnati Psychology Department ("University") and by the Ohio Rehabilitation Services Commission be granted.  I further recommend that the motion for judgment on the pleadings filed by Defendant Stutz be granted.  Consequently, I recommend that all of Plaintiff's motions be denied.

4

## II. Analysis

### A. Motion to Dismiss by University of Cincinnati Psychology Department

Plaintiff's only claim against the University of Cincinnati Psychology Department is by inference.  Count One makes no mention at all of the University, but in Count Two Plaintiff alleges that Defendant Dr. R. Stutz, a University employee, violated federal and state law during the course of a psychological evaluation performed by an unlicensed student.  The University concedes that it employs Dr. Stutz as a psychiatrist, but argues that it is entitled to dismissal of any implied claim against it in part because it is immune from monetary damages, as a state entity, under the Eleventh Amendment.  *See generally Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984); *Dillion v. University Hospital*, 715 F. Supp. 1384, 1386 (S.D. Ohio 1989)(recognizing University Hospital as a state entity entitled to immunity).

In a prolix construed response in opposition (Doc. 16),[2] Plaintiff argues that the "Supremacy Clause" renders the Eleventh Amendment "without merit."  (Doc. 16 at 31).  Plaintiff cites no case authority contrary to the authority cited by Defendants, and his fleeting references to portions of Ohio's Administrative Code are not on point.  Although the precise nature of Plaintiff's argument remains very difficult to follow, this Court has no doubt that the Eleventh Amendment does in fact apply to bar Plaintiff's claims against University Hospital in this case.

---

[2] Much of the 74 page response, improperly styled as a "motion," is difficult for this court to decipher.  Although typed, the document is replete with typographical errors, sentence fragments, and arguments that strain this Court's ability to interpret it.  A responsive memorandum of this length, far in excess of the usual 20-page limit, clearly violates Local Rule 7.2(a)(3).  Nevertheless, mindful of Plaintiff's *pro se* status the Court has employed its best efforts to liberally construe all of Plaintiff's myriad arguments.

**B.  Motion to Dismiss by ORSC**

Defendant ORSC also has moved to dismiss any claims against it.  Again, the Court has construed Plaintiff's 74-page "motion" as a response in opposition to Defendant's motion.

As referenced, only Count One of Plaintiff's complaint appears to contain any allegations concerning ORSC.  Count One generally alleges that Defendant ORSC violated Plaintiff's rights by adversely determining that he was not entitled to rehabilitation benefits. On October 26, 2009, Plaintiff filed an administrative appeal and request for reconsideration of the ORSC decision that Plaintiff now challenges in this court. (Doc. 13-1).  An administrative hearing was held on March 3, 2010, and the hearing officer's decision denying Plaintiff's appeal was issued on May 12, 2010.  (Doc. 13-2).

In the May 12, 2010 decision, the hearing officer upheld the determination by the BVR and Vocational Rehabilitation Counselor that Plaintiff was not eligible for services, and that Plaintiff's case should be closed.  The determination followed the submission of a psychiatric evaluation completed by Defendant Robert M. Stutz, M.D.  In summary, the hearing officer agreed with the administrative decision that: 1) Plaintiff had failed to submit documents or records from Kentucky BVR proving his diagnosis of alcohol abuse or other criteria that would prove his *present* eligibility for services; 2) Plaintiff would not permit Ohio BVR to request past records; 3) Dr. Stutz's comprehensive assessment supported a diagnosis of schizophrenia and schizoaffective disorder; 4) Plaintiff's severe mental illness precluded him from benefitting from BVR services absent treatment of that illness; and 5) Plaintiff failed to take action to obtain treatment as directed, making closure of the case proper under ORSC guidelines.  (Doc. 1-1 at 162-164, May 12, 2010 Hearing Officer

6

Report and Decision).  Plaintiff did not seek further administrative review of the May 12, 2010 BVR decision but instead filed the instant federal lawsuit.

Defendant ORSC argues in its motion to dismiss that, as an Ohio administrative agency, it is also entitled to Eleventh Amendment immunity for Plaintiff's claim for monetary damages.  I agree.  As explained above, the Eleventh Amendment clearly bars Plaintiff's claims for monetary damages in this case.

In addition, Defendant ORSC argues that this Court lacks jurisdiction to review Plaintiff's claims against ORSC, because Plaintiff seeks to overturn the prior adverse administrative appeal but filed his complaint in this Court beyond the requisite statute of limitations.  Again I agree.

Judicial review of a final decision of an administrative hearing officer under the Rehabilitation Act is generally available through 29 U.S.C. §722(J).  However, review must be sought within the relevant time limit established for such review.  "The Rehabilitation Act, like many civil rights statutes, does not contain a specific limitations period." *McCullough v. Branch Banking & Trust Co.*, 35 F.3d 127, 129 (4th Cir. 1994).  Thus, "Congress has directed the courts to select the most appropriate state statute of limitations to apply to the federal cause of action."  *Id.; see also Carrigan v. New York State Educ. Dep't*, 485 F. Supp.2d 131, 136 (N.D.N.Y. 2007).

In this case, the applicable limitations period for judicial review of the ORSC decision is limited to the time specified in Ohio's Administrative Procedure Act, which in this case was fifteen (15) days from the date of the May 12, 2010 order.  *See* O.R.C. §119.12; *Whitehead v. Ohio Rehab. Servs. Comm'n*, (N.D. Ohio. Aug. 9, 2010)(holding that O.R.C. §119.12 statute of limitations applied on nearly identical facts, where plaintiff sought to

overturn decision by ORSC denying benefits).  Because Plaintiff failed to file his complaint within fifteen (15) days of the mailing of the hearing officer's May 12, 2010 decision, Plaintiff's complaint is time-barred.

In his construed response in opposition to Defendant's motion, Plaintiff first disputes that he is attempting to "appeal" the prior administrative decision, insofar as he desires a jury trial in this court, rather than a remand for reconsideration to the administrative agency. "This is [a] lawsuit, not [an] appeal" reads one heading in Plaintiff's response.  (Doc. 16 at 23).  However, Plaintiff does not dispute that he seeks to overturn the prior administrative decision.  In fact, while denying that he seeks to "appeal" that decision, in the same memorandum Plaintiff chiefly advocates for a contrary decision by this Court.  (Doc. 16). In short, Plaintiff does not contest the fact that the primary issue he presents is whether he should have been found eligible for vocational services and whether his case should have been closed.  Plaintiff's disagreement with the terminology notwithstanding, Plaintiff's claim is in fact one for judicial review of the ORSC's prior administrative decision.  As such, the claim is time-barred.

As best this court can ascertain, Plaintiff alternatively contends that fifteen days is too short a limitations period, and that he should have had ninety days to file suit (Doc. 16 at 24).  Plaintiff may be referring to the 90-day time period generally available for judicial review of an employment discrimination claim filed with the EEOC, *see, e.g.*, 42 U.S.C. §2000e-16(c); *Mitchell v. Chapman*, 343 F.3d 811, 821 n. 10 (6th Cir. 2003).  However, Plaintiff brings no claims against an employer in this case, and there is no evidence that Plaintiff ever sought relief from the EEOC.  The Ohio legislature alone, not this Court, has the power to modify the applicable statute of limitations for Plaintiff's claim seeking judicial

8

review of a decision by an Ohio administrative agency.

I do not view Plaintiff's complaint as including any claim against ORSC other than a claim seeking to overturn the May 12, 2010 decision affirming the administrative denial of services. However, to the extent that Plaintiff may be attempting to bring an individual claim concerning more systemic error, Defendant alternatively argues that Title I of the Rehabilitation Act does not provide either an express or an implied private right of action. *See, e.g., Jackie S. v. Connelly,* 442 F. Supp.2d 503 (S.D. Ohio 2006).

In his response in opposition, Plaintiff argues that the language of the Rehabilitation Act itself clearly provides "a private, implied and express right to action" and invites this court to "check this out."  (Doc. 16 at 46).  Unfortunately for Plaintiff, the Court finds Defendant's authority to be persuasive.  Plaintiff's authority also fails to alter the conclusion that his individual claim falls under 29 U.S.C. §722(J) and is time-barred on the facts presented.

At least to some extent, Plaintiff appears to claim that he also is seeking judicial review and/or entitlement to services under the Americans with Disabilities Act ("ADA"). Plaintiff apparently believes that he is an individual with a qualified disability under the ADA based upon his diagnosis of diabetes, and suggests that Defendant ORSC has previously recognized his entitlement to benefits under this same "disability."  (Doc. 16 at 27, 32, 34). "Proof of medical ADA disability acceptance thru [sic] diagnosis exist [sic] in Exhibit E offered here as a medical examination, diagnosis amd [sic] medication for diebetes [sic] and hyperlipidemia, which is usually associated with diebetic clients.")(*Id.* at 40).

Contrary to Plaintiff's belief, a diagnosis of diabetes, standing alone, does not render an individual "disabled" under the ADA or the Rehabilitation Act ("RA").  *See Gilday v.*

9

*Mecosta County*, 124 F.3d 760, 762 (6th Cir. 1999)(plaintiff's diabetes was not a disability under the ADA); *see also Perotti v. Medlin,* 2009 WL 723230 *2 (N.D. Ohio, March 19, 2009)(plaintiff failed to allege disability which limits major life activity under either ADA or RA).  Even if some other agency recognized Plaintiff as qualifying for benefits at some point in time, such a determination would not forever bind the ORSC to providing benefits endlessly into the future.[3]

In any event, as previously noted, there is no evidence that Plaintiff ever filed an EEOC charge against Defendant ORSC at any time, much less within 180 days of the alleged discrimination, or that he initiated this lawsuit within ninety days of receipt of a right-to-sue letter.  To the contrary, Defendant has filed an Affidavit attesting to the fact that the EEOC has no record of any such charge (Doc. 18-1).[4]

Defendant ORSC presents additional arguments in favor of dismissal of Plaintiff's claims under Rule 12(b)(6).  In light of the recommended dismissal on multiple grounds discussed above, the Court declines to reach the additional arguments.

### C.  Defendant Robert Stutz's Motion for Judgment on the Pleadings

In Count Two of his complaint Plaintiff alleges that: 1) Dr. Stutz's report to the ORSC contained false or wrong conclusions regarding Plaintiff's mental condition, and that 2) Dr.

---

[3]Plaintiff alleges that he received rehabilitation services from the ORSC's Kentucky counterpart some years ago.

[4]As part of his originally filed exhibits, Plaintiff included correspondence concerning a complaint of discrimination filed with the Philadelphia Office for Civil Rights, U.S. Department of Education, against Northern Kentucky University ("NKU").  The correspondence appears to reference NKU's alleged discrimination against Plaintiff while he was enrolled in a "respiratory care" program, due to Plaintiff's alleged disability of alcoholism.  (Doc. 1-1 at 139-149). NKU is not a party to this lawsuit and there is no evidence of a "right-to-sue" letter.  In short, the prior administrative complaint appears unrelated to the claims presented in this lawsuit.

Stutz performed a deficient examination, which led to a misdiagnosis.  In addition, although it is unclear whether this allegation pertains to Defendant Stutz or the University, Plaintiff alleges that his psychological examination and/or evaluation were illegally performed by an unlicensed student.   Dr. Stutz's evaluation formed the basis of the decision of the ORSC to deny Plaintiff benefits.

Defendant Stutz has filed a motion for judgment on the pleadings based upon arguments that: 1) any claim relating to the content, accuracy or truthfulness of Dr. Stutz's report to the ORSC is barred by the doctrine of testimonial or witness immunity; and 2) Plaintiff's state law medical malpractice claim is barred by Rule 10(D)(2) of the Ohio Rules of Civil Procedure, because Plaintiff failed to file an "Affidavit of Merit" as required under Ohio law.

### 1.  Claims Regarding the Content of Dr. Stutz's Report

To the extent that Plaintiff names Dr. Stutz in any official capacity in his role as a psychiatrist employed by the University, Plaintiff's claim against Dr. Stutz for monetary damages would be barred by Eleventh Amendment immunity, just as is his claim against the University itself.  In addition, any claim by Plaintiff against Dr. Stutz in his individual capacity, based upon the accuracy and credibility of Dr. Stutz's report, is barred by immunity under Ohio law.  With rare exceptions, a report submitted by a physician to a state agency after examination is covered by testimonial and witness immunity under state law. *See Elling v. Graves,* 94 Ohio App.3d 382, 387-388, 640 N.E.2d 1156 (1994); *Willitzer v. McCloud*, 6 Ohio St.3d 447, 453 N.E.2d 693 (1983).

As Defendant notes, Plaintiff's complaint contains no allegations at all that Dr. Stutz violated any federal law, but instead appears based solely on state law claims.  In addition

11

to questioning the accuracy of Dr. Stutz's conclusions, Plaintiff alleges that Dr. Stutz committed "psychological malpractice" in drafting the report.

Dr. Stutz is entitled to judgment as a matter of law because Ohio law requires any plaintiff presenting such a medical malpractice claim to file an Affidavit of Merit.  See Rule 10(D)(2), Ohio Rules of Civil Procedure.  *See Daniel v. United States*, 716 F. Supp.2d 694, 697-698 (N.D. Ohio, 2010)*; Perotti v. Medlin*, 2009 WL 723230 ** 9-10.  This Court has routinely dismissed medical claims where the Plaintiff has failed to comply with Ohio's procedural requirements*. See Weatherford v. Hamilton County Sheriff*, 2010 WL 3260112, *1 (S.D. Ohio, Aug. 18, 2010).

In his response, Plaintiff appears to argue that the "medical malpractice" of which he complains relates to all three Defendants' "discrimination" against Plaintiff as a person with diabetes, and Dr. Stutz's refusal to acknowledge this "disability."  (Doc. 16 at 40). However, as previously discussed, a diagnosis of diabetes does not prove a "disability" or automatically entitle Plaintiff to benefits from the ORSC.   More importantly, Plaintiff fails to address Defendant Stutz's persuasive argument that he is entitled to judgment as a matter of law both on the basis of immunity, and for failure to file an Affidavit of Merit.

## 2.  Jurisdiction

In addition to the referenced arguments, Dr. Stutz adopts and incorporates by reference "the jurisdictional arguments raised by the ORSC."  As discussed above, those arguments pertain to Plaintiff's attempt to file an untimely claim for judicial review of an administrative decision by the ORSC denying benefits.  The jurisdictional arguments do not directly pertain to the claims against Dr. Stutz.

12

**D.  Plaintiff's Motion for Demand of Relief by Clerk's Default**

In addition to opposing Defendant's motion to dismiss, Plaintiff seeks entry of a default judgment against the Defendant University based upon the alleged failure of the University to timely answer or respond to his complaint.  The record reflects that on October 18, 2010, this court directed summons and the complaint to be served on Plaintiff's behalf by the United States Marshal (Doc. 7).  In its response, counsel for the University states that the Defendant was served on November 18, 2010.   (Doc. 21).  Defendant's motion to dismiss, filed in lieu of an answer on December 6, 2010, was timely filed.  Accordingly, Plaintiff's motion for entry of default or for default judgment against the University must be denied.

In a reply memorandum filed March 7, 2011, Plaintiff complains that he "does not recognize" the University's attorney.  Plaintiff proceeds to argue that the University "only posted their responses to the Pacer website" without serving Plaintiff with a paper copy as required (Doc. 22 at 2).  Plaintiff also appears to believe that the University should not have filed a response separate from Dr. Stutz.  Instead, Plaintiff would require all three Defendants to share the same defense counsel.

As a separately named Defendant, the University is entitled to its own counsel.  Plaintiff's belief that his having "joined" three Defendants in a single lawsuit requires those Defendants to share counsel is in error. (*See, e.g.*, Doc. 16 at 5-7).

To the extent that Plaintiff contends that the Defendant University failed to properly serve him with its motion to dismiss and/or the University's response to Plaintiff's motion for default, it is apparent by virtue of Plaintiff's response in opposition to Defendant's motion (Doc. 16), and Plaintiff's reply memorandum (Doc. 22) that he ultimately received

everything that the University filed.  Because Plaintiff was provided adequate time to respond, any administrative error concerning service was not prejudicial, and is not grounds for denying Defendant's motion to dismiss or for granting Plaintiff's motion for default.

### E.  Plaintiff's Motion for Award of Demand for Relief by Clerk's Default

In a separately filed motion (Doc. 15), Plaintiff also seeks entry of default and/or default judgment against ORSC and its counsel.  Plaintiff complains about the amount of time that elapsed between the date he originally delivered his copies of the complaint and completed summons forms to the Clerk of Court, and the date that Defendant ORSC was actually served (January 10, 2011).  Plaintiff asserts that the late service must have been caused by "a misdirection and falsehood" (Doc. 15 at 2).

In an attempt to prove earlier actual service, Plaintiff has attached federal express bills dated December 13, 2010.  He appears to argue that because he paid Federal Express on that date, all Defendants must have received a copy of his complaint soon after.  However, the receipts do not suffice to prove actual service on any Defendant on an earlier date.[5]  In the absence of contrary proof, the Court accepts the representation of defense counsel that service was not perfected on ORSC until January 10, 2011.  Because Defendant timely filed its motion to dismiss on January 27, 2011, Plaintiff's motion for entry of default or default judgment must be denied.

---

[5]This is true even as to the receipt addressed to the legal department of Defendant ORSC, signed by "C. Jenkins"on December 14, (see Doc. 16 at 52), because there is no evidence that "C. Jenkins" had any authority to accept service on behalf of ORSC.

14

### F.  Plaintiff's Second Motion to Quash and Proceed into Trial By Jury

On February 10, 2011, Plaintiff filed a document entitled "Second Motion to Quash Dismissal and Proceed Into Trial By Jury" (Doc. 16).  Although construed primarily as a response in opposition to Defendants' three dispositive motions, Plaintiff also moves "to quash the present motion for dismissal" by the Defendant University and "to abolish the seperation [sic] of Defendants."  (Doc. 16 at 10-11).[6]  Again, Plaintiff repeatedly - and erroneously- argues that all three defendants must share one attorney.  Because the first attorney to appear in its answer "endorsed" Plaintiff's demand for a trial by jury, Plaintiff also believes that all three Defendants should be bound to proceed through trial.  (Doc. 16 at 49).

An answer acknowledging the right to a trial by jury does not bind a defendant to proceed to trial any more than does the filing of a complaint.  Most civil cases are resolved in this Court long before trial, whether on dispositive motions or through settlement.  Accordingly, Plaintiff's most recently filed motion also will be denied.

### G.  Plaintiff's Motion to Proceed With Case in Another District

On April 27, 2011, Plaintiff filed a motion seeking to transfer this litigation to another district based upon conclusory allegations of judicial bias.  No legitimate grounds for recusal or for transfer are either explained by Plaintiff, nor do any such grounds exist.  Moreover, Plaintiff's motion was received on the date that this Report and

---

[6]In addition to his primary argument attempting to bind the Defendants over to trial, Plaintiff's "motion to quash" attempts to add at least two new claims and a new party.  Plaintiff's attempt to add new claims and new parties, without filing a motion to amend his complaint, is procedurally improper.  Given the disposition of all claims presently included in Plaintiff's complaint in Defendants' favor and recommended dismissal of this litigation, further amendment would be futile.

Recommendation was originally to be filed, after this Court had expended substantial resources on this case.  Accordingly, Plaintiff's motion will be denied without the necessity of awaiting a response.

### III.  Conclusion and Recommendation

Accordingly, **IT IS RECOMMENDED THAT:**

1.  Defendant University of Cincinnati's motion to dismiss (Doc. 11) be **GRANTED**, with all claims to be dismissed against that Defendant**;**

2.  Defendant Ohio Rehabilitation Services Commission's motion to dismiss (Doc. 13) be **GRANTED,** with all claims to be dismissed against that Defendant;

3.  Defendant Stutz's motion for judgment on the pleadings (Doc. 20) be **GRANTED**, with judgment entered as a matter of law in favor of that Defendant;

4.  Plaintiff Johnson's motions for demand of relief by Clerk's Default, for award of demand for relief by Clerk's Default,  to quash dismissal and proceed to trial, and to proceed with case in another district (Docs. 14, 15, 16, and 26) be **DENIED**; and that

5.  This case be dismissed from the active docket.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

MARK S. JOHNSON,                                      Case No. 1:10-cv-554

      Plaintiff,                                   Dlott, J.
                                                       Bowman, M.J.

   v.

REHABILITATION SERVICES, et al.,

      Defendants.


**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).